Good morning. May it please the Court. Camille Diem on behalf of the United States. I'd like to try to reserve a couple minutes for a rebuttal. I'll help you. Thank you. The United States is asking this Court to reverse the district court and to reinstate this prosecution on two bases. The first is statutory construction and the second under aiding and abetting liability. There's really no question in this case that Ezeta, a college professor, applied online for student aid funds on behalf of students, procured those funds for the students through the online application, none of which qualified for student aid because, as he knew, they had not completed high school. He was charged under 20 U.S.C. 1097A, which prescribes knowingly and willfully obtaining federally insured student loans by fraud or false statement. Ms. Diem, let me ask you this. It seemed to me when I looked at the indictment that there was a lot of other conduct that could have been charged, for example, mail and wire fraud, submission of false claims against the United States. Is there some reason why the government chose to proceed under 1097A and not under other similar criminal statutes? The record doesn't indicate the reasons, Your Honor, but I would say that it was an important case to the Department of Education. And I was told that, and so I can convey that. And I also know that it's a small dollar amount case as well. That is obvious. But the record does show that Ezeta was offered a misdemeanor and refused that plea agreement, and it shouldn't buy him a free chance at having no liability or whatsoever. So those are the best reasons I can give for the charges and the way they were brought. Through the statute that was charged, Congress sought to provide broad protection for federally insured student financial aid trusts, funds, excuse me, entrusted to private educational institutions. I was quoting from Bates, 96 Fed 3rd, 964, at page 969. So the statute was specifically meant to provide broad protection to these funds. So that is another reason. And basically, Ezeta admits the fraud. What he said, and the district court agreed, is that he wasn't liable under the statute because he didn't personally receive the funds. They went directly to the students from the online application. And this is another question. I mean, the statute also punishes attempt, does it not? It does. So if a person attempts to submit a false application for student loan funds, it wouldn't require that the funds actually be received by anyone, would it? Not at all. So all the more it shouldn't matter that he didn't personally receive them. Our reading is that obtain is broad enough to encompass procure, get, those kinds of things in everyday use. And the district court decision significantly reduces the scope and the natural use of the word obtain. And it also thwarts the objection, the objectives of the statute. In essence, it's as though it's creating a rule that you can obtain, fraudulently obtain a loan for your friend, or you can obtain by fraud, just don't touch the money. And we don't think this court can countenance that. It's unreasonable. When we looked, neither party cited to us any case interpreting obtain. We couldn't find any. I mean, I guess we're sort of left with the dictionary definition and sort of the colloquial use of what it means to obtain something. Plain and common usage. Correct. But look at the common usage as we cited in our brief of general obtaining, boots for his troops, other examples, a politician obtains funds for a project, volunteers obtain relief for homeless. I obtain gifts online and have them sent directly to the recipients. Or a mother really wants her son to go to college, her son living in another state. So she fills out a loan application stating that he's completed high school when he hasn't and obtains a federally insured loan for her son that goes directly to him in that state. Could you briefly address the aiding and abetting theory? Sure, Your Honor. The aiding and abetting statute includes two subsections, subsection A and subsection B. And it appears that the district court overlooked subsection B is the best way I can analyze his decision. Subsection A is the one that says aids, abets, counsels, commands, induces, procure, all those commonly quoted and cited words. But subsection B states whoever willfully causes an act to be done, which if directly performed by him or another, would be an offense against the United States, is punishable as a principle. And the actual historical and statutory notes say that this section B removes all doubt that one who puts in motion or assists in the illegal enterprise or causes the commission of an indispensable element of the offense by an innocent agent or instrumentality is guilty as a principle. I think that's just directly open and shut on the aiding and abetting. As Zeta made a plan, he put the plan in action, he took all the operative steps, he attached someone else's name and address to the work he did. But he caused the disbursement of the loans to his students and he caused the students to receive the loans. So he literally, he obtained the loans and he's guilty under aiding and abetting section 2 even if without that construction of the word obtain. This court has applied that subsection 2 that way in a number of cases that are cited. But U.S. v. Cozzi, U.S. v. Lee, they're not obtained cases but they're in different contexts and they've applied the principle that subsection 2 creates guilt under aiding and abetting. It looks like I have. Why don't we hear from Ms. Wexler and you can reserve the rest of your time. Good morning. Brenda Wexler on behalf of Mr. Zeta. Your Honor, I think that you hit it right on the head when you asked the government whether there wasn't a better statute under which Mr. Zeta could have been prosecuted. And I think the answer is yes. We're not contending that there was no offense committed in this case. Our position simply is that this is not the proper statute to charge Mr. Zeta with. What's your answer to my question to Ms. Dam about the attempt provision in the statute? That would not require the receipt of any funds at all, would it? I think that's a very good question. However, I think that there's... Do you have a good answer? I hope I do and I can hear from the bench. But I think the answer to that is that Mr. Zeta would need to attempt to both transmit the false statements and attempt to also obtain the false statements. I don't think that we can just have an attempt... I thought there was an allegation that he had obtained or supplied a false certificate of graduation in support of one of the applications. That is correct. And then he transmits the false application itself. What more would he need to do in order to violate the attempt portion of the statute? There would need to be something in the record, something in the government's evidence that would support that he attempted to obtain those funds. And our argument... What more, though? Are we now arguing about what it means to obtain? Because it seems to me that once he completes the false application and transmits it to whatever DOE unit administers the federally insured funds, there's nothing more to be done other than the agency relying on the representations in the application and then cutting the check or dispersing the funds to the student. My argument would be that there needs to be a mens rea as to both acts. There needs to be what? Some sort of mens rea as to both acts. I mean, not just causing the transmission of the applications. But if he knowingly and willfully obtains both the false certificate and submits the false application, doesn't that meet the mens rea element with regard to making a false application? Well, and we're back to your original question, which is, is that not a violation of Ball Statement Section 18 U.S.C. 2001? It is. It's not charged with it. Correct. Okay. I agree. I think the answer is, to my question, it's because the Department of Education Office of Inspector General was the investigating agency, and my guess is that they have primary investigative responsibility for this particular statute, whereas if it's a 1001 violation, usually the postal inspectors or the FBI investigate those kinds of crimes. I mean, this really is probably a test case for the Department of Education. But that still doesn't answer the question we have to wrestle with. Correct. Which is, how do you interpret 1097A on this kind of alleged behavior? And I think the court also mentioned that it had to rely to colloquial use or its ordinary meaning. But I do want to remind the court that the term, first of all, the term to obtain does not seem to imply anything but the exercise of dominion and control. That seems to be the most ordinary and common use of the word. Let me give you a hypothetical. Suppose we're dealing with something you and I are more familiar with, a bank robbery case, and we're dealing with the getaway driver who's sitting outside in the getaway vehicle. He's not the one who goes into the bank and presents the note and perhaps displays a weapon that causes the bank teller to part with the funds. So the robber actually obtains the money, and then he jumps into the getaway car, and the getaway driver makes good his escape. You would agree, would you not, that on the facts of my hypothetical, the getaway driver would be guilty under a 2B aiding and abetting theory with the commission of armed bank robbery? If he obtains the funds at some point. Suppose he never gets the funds. I'm just talking about stop my hypothetical right at the point where he hits the gas and they speed away, and at this point only the robber has the money. I think that the answer is yes in the sense that the getaway driver is aiding and abetting in every single element of the offense, whereas in this case. He didn't present the demand note. He didn't display the weapon to the teller. He didn't put the teller in fear of his or her life if they didn't impart the funds. But he facilitated that by taking the robber there. I mean, we don't know all of them. I'm having a hard time seeing the distinction between my hypothetical and the allegations against your client. Why wouldn't he be liable under an aiding and abetting theory, whether he ever put his hands on the money or not? Because he never caused the commission of 1097A. That's the short answer. But if he submits the false application and he knows the agency is going to rely on it, doesn't he put in motion the chain of events knowing full well that the agency is going to disperse the funds based on the false representations that he's made? What more does he have to do to be liable under 1097A? There needs to be evidence that he at some point in time was going to obtain or attempt to obtain those funds. I guess what I'm trying to get to is that the statute does not seem to cover, again, bizarre fact situations like the one we have. I don't think it's such a bizarre set of facts. Let's take a false claim against the government. A government contractor, a corporation, and a corporate officer, say the chief financial officer, submits the claim to the government. The government pays whatever amount of money is owed for the contractor's work, and the money goes to the corporation. It doesn't go to the chief financial officer. You would have to agree in that case that a false claim had been filed and the statute was breached. The problem that I'm having with these facts, Your Honor, is that the statute has to be construed. I mean, obtain cannot be construed aside and separate from the other terms that are used in the statute, which is to embezzle, misapply, to steal. And all of these other terms seem to require the dominion and control over these funds. So I don't see how we can obtain in a way that's so different from these other terms that are in the statute. I mean, that is indeed one of the ‑‑ Let's go to the tax area, you know, the tax situation. You know, we have case law that basically says that when a tax defrauder induces a taxpayer to file a fraudulent tax return because he has shown the person who submits the return how to evade the internal revenue laws, the tax savings goes ‑‑ the refund goes to the taxpayer, not to the guy who induced him to do it. But don't you think he could be charged under an attempt or any of that? But usually in those situations, the taxpayer is deriving some sort of benefit. And Mr. Seta derives ‑‑ there's nothing to suggest that Mr. Seta derives any kind of benefit whatsoever. He continued to be employed, didn't he? Didn't his employer expect that money? He continued, and to this day he continues to be employed. Well, wouldn't his employer look favorably on all the students he's signed up for their college? And indirectly, his salary is being paid by fraudulent funds received from the Department of Education. I suppose so, except that he continues being employed today despite these charges. Well, they haven't been resolved. They have not. So I guess I just have one more comment, and that is that none of the cases that have been cited really address a situation like this one, and I think that the court already mentioned that there's nothing really defining the term obtained. We really should, whatever we do, whichever way we go, we really should publish an opinion because there is no Ninth Circuit law in this area. Only if Mr. Seta wins. Counsel, you're going to get a result one way or the other. Whether you like it or not, we'll see. I have nothing further unless the court has any more questions. Thank you very much, Ms. Wexler. Ms. Dam, you get the final word. I'd just like to point the court to a couple of things that might be helpful since we've had trouble and we need the definition of obtained. In the case of United States v. Giles, the Supreme Court case, I think, is very instructive on that. The facts of that case were basically where it was a making of a false entry and the defendant did not write or make the entry. He withheld receipts that caused the entry to be made, and the Supreme Court said that the statute, the word making, was broad enough to encompass withholding the receipts so they didn't get into the box and didn't get into the books. And in doing so, they said, notwithstanding that criminal statutes are strictly construed, it does not require the words of an enactment to be given their narrowest meaning or that the lawmaker's intent be disregarded. That's at page 48, 300 U.S. page 48. And then they say that to hold the statute broad enough to encompass his actions as making fulfill the intent of Congress. I think that's helpful. I think that's applicable here. And another case that I think may be helpful is United States v. Moore, 703 Fed 3rd 562. That's the D.C. Circuit, 2012. And in that case, a defendant was moving to withdraw the plea. And the district court in his Rule 11 colloquy stated the elements by saying the defendant must have misapplied instead of obtained, and it was an obtaining case. And the Moore court held that misapplied and obtaining are not the same and that in a case involving unlawful obtaining, there's no need to have misapplied or converted the funds. And I think that's helpful here. They're independent theories of liability, and the word obtain in its natural usage is certainly broad enough to encompass what happened here. And it seems like this crime was exactly what the statute is trying to prohibit. And we'd ask the court to respectfully to reverse this case and send it back for prosecution. All right. Thank you both very much. The case was very well argued, and we'll take it under submission and get you an answer as soon as we can.
judges: Rice, Tallman, Rawlinson